IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| WARRIORS AND FAMILY ASSISTANCE CENTER LLC, TONYA PRICE, MANRING & FARRELL ATTORNEYS AT LAW, and CLIFFORD FARRELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRAJECTOR MEDICAL LLC f/k/a VET COMP & PEN MEDICAL CONSULTING LLC,<br><br>Defendant. | Case No: 1:23-cv-290-AW-HTC<br><br>CLASS ACTION<br><br>JURY TRIAL DEMAND |

**PLAINTIFFS' TIME-SENSITIVE MOTION FOR
<u>RULE 23(d) PROTECTIVE ORDER</u>**

Plaintiffs Warriors and Family Assistance Center LLC, Tonya Price, Manring & Farrell Attorneys at Law, and Clifford Farrell (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Putative Class"), seek the entry of a Protective Order to stop Defendant Trajector Medical LLC f/k/a Vet Comp & Pen Medical Consulting LLC ("Defendant") and its representatives and attorneys from privately contacting and soliciting releases from the named Plaintiffs and Putative Class members concerning the subject matter and claims advanced in

this case, an order requiring a corrective notice directed to Plaintiffs and the Putative Class members, requiring the Defendant to seek this Court's approval prior to sending any other communications to the Putative Class, and any other action the Court deems appropriate (including in response to Defendant's violation of Florida Rule of Professional Conduct 4-4.2(a), which bars *ex parte* communication with represented parties). This motion is time-sensitive because Trajector's communication with the named Plaintiffs and Putative class members demands responses by July 20, 2025, under threat of litigation.

As grounds for this motion, Plaintiffs state as follows:

**I.  BACKGROUND**

At 11:00 p.m. on July 3, 2025, Defendant's counsel sent an email to all members of the National Organization of Veterans' Advocates ("NOVA"), a membership organization of accredited representatives, agents, and attorneys who advocate for disabled veterans. All Department of Veterans Affairs-accredited attorneys and agents who are members of NOVA are also members of the Putative Class. Plaintiffs' counsel learned of the email when named Plaintiff Clifford Farrell, who received the email, forwarded it to them on Independence Day. Plaintiff Tonya Price also received the same *ex parte* communication from Defendant's counsel on the same day.

The email, which is attached as Exhibit 1, consisted of a letter signed by Casey

Thompson, Defendant's Corporate Counsel, who is also counsel of record for Defendant in this case (the "July 3 Letter"). The letter began by stating that "[w]e understand there has been some misinformation circulating regarding our services, and we welcome the opportunity to clarify our mission and operations." Ex. 1 at 2. It proceeded to present a biased and inaccurate description of the nature and characteristics of Defendant's services, citing case law and including claims that "[w]e do not (i) prepare, present, or prosecute claims, (ii) complete VA claims forms, we do not file VA claims paperwork, (iii) represent Veterans nor apply law to facts, or (iv) we do not assist Veterans with their appeals." Ex. 1 at 3. Whether or not Defendant engages in these actions is a central issue in this case, which concerns the nature and characteristics of Defendant's services. *See, e.g.*, Order, ECF No. 106, at 2-3 ("The thrust of the claim is that [Defendant] acts as Plaintiffs do, in seeing claims through."); 3d Am. Compl., ECF No. 69, ¶¶ 2, 25-27, 30, 67-69.

The July 3 Letter then described at length what it called a "Claim Shark" campaign to "call out bad actors in the VA disability space," and claimed that NOVA had instructed its members to tell Defendant's clients to breach their contracts with Defendant. Ex. 1 at 3-4. The letter's tone then grew sharper, accusing the letter's recipients of "engaging in conduct designed to interfere with Trajector Medical's ability to service its Veteran clients." Ex. 1 at 4. It went on:

> Specifically, Trajector Medical is concerned that some recipients of this letter may be engaged in one or more of the following unlawful

3

activities: (i) making or promoting false or misleading statements about Trajector Medical's services; (ii) actively deterring prospective clients from engaging Trajector Medical; (iii) encouraging Trajector Medical's current clients to refuse to pay Trajector Medical and otherwise breach their contracts with Trajector Medical; and (iv) colluding with Veterans' Service Organizations and law firms to participate in these unlawful acts in an anticompetitive effort to drive Trajector Medical and similar services out of business.

Ex. 1 at 4-5.

The letter then asserted that "[s]uch conduct would violate numerous state and federal laws," arguing that it could constitute defamation, tortious interference with business, and even violations of antitrust laws. Ex. 1 at 5. Using notably broad language, Defendant then ordered the named Plaintiffs and the Putative Class members to:

1. Permanently cease and desist from making public statements or issuing internal guidance that inaccurately depicts Trajector Medical or the legality of private medical evidence services, including by removing all references to, and otherwise stop labeling Trajector Medical as, a "Claim Shark," or characterizing Trajector Medical and its services as predatory, illegal, misleading, or fraudulent;

2. For all future public statements or internal guidance on "Claim Sharks" or similar characterizations, make an explicit call-out that Trajector Medical and similar private medical evidence services companies who do not prepare, present or prosecute claims are NOT Claim Sharks;

3. Permanently cease and desist from interfering with Trajector Medical's current or prospective business relationships, including by discouraging Veterans from using Trajector Medical's services or telling Veterans that they are not required to fulfill their contractual obligations to Trajector Medical; and

4

> 4. Permanently cease and desist from coordinating with others to interfere with Trajector Medical's business through any of the above-described conduct or any other means.

Ex. 1 at 5-6. It then presented a litigation hold notice for broad categories of documents, including "all documents . . . that mention or refer to Trajector Medical" and "all agreements . . . or communications with law firms or other entities regarding Veteran services." Ex. 1 at 6.

Defendant concluded by explicitly soliciting communications and settlements from the July 3 Letter's recipients—including the named Plaintiffs and Putative Class members—within just 17 days:[1] on an accelerated timeline:

> We invite you to contact us to begin a more detailed dialogue. Other parties, including a top firm in this space, are starting to come forward with corroborating information and have settled this issue with Trajector Medical. **We invite you to settle outside of court as well and are willing to give a full release of liability if you do so**. Please advise us of your earliest availability to discuss, or confirm in writing to LegalDepartment@TrajectorMedical.com, no later than July 20, either (i) that you do not engage in any of the above-described unlawful conduct and that you will not engage in such conduct going forward, or (ii) that while you do engage in the above-described unlawful conduct, you will immediately stop.

Ex. 1 at 6 (emphasis supplied).

To date, Defendant has refused to provide copies of any proposed settlements to Plaintiffs despite multiple oral and written requests to do so. However, Defendant

---

[1] Defendant's counsel's letter ordered named Plaintiffs and Putative Class members to contact Defendant immediately, but no later than Sunday, July 20, 2025.

has admitted that at least one law firm has entered into a settlement agreement with Defendant. The details have been withheld.

Prior to this motion's filing, the parties exchanged letters and met and conferred on July 9, 2025, concerning the July 3 Letter. Confoundingly, Defendant argued, in its letter and during the meet-and-confer, that the July 3 Letter did not concern the subject matter or claims advanced in this case and was entirely separate from this case. But the July 3 Letter expressly stated: "[a]s you may know, Trajector Medical is currently defending itself from what it believes is a baseless lawsuit." Ex. 1 at 6. And during the meet-and-confer preceding this motion, Defendant's counsel confirmed that the "baseless lawsuit" referred to in the July 3 Letter is this very case.

In addition, the claims in this case concern the nature and characteristics of Defendant's services, alleging that the advertising of those services is false or misleading, and thus that the advertising is illegal under the Lanham Act. *See* 3d Am. Compl., ECF No. 69, ¶¶ 2, 25-27, 30, 67-69. Plaintiffs' earlier complaint includes mention of Defendant as a "claims shark" company, an assertion the July 3 Letter claims is defamation. 1st Am. Compl., ECF No. 32, ¶ 7. And the relief Plaintiffs and Putative Class members seek, if granted, would almost certainly "interfere" with Defendant's business.

Due to the breadth of the language in the July 3 Letter's demands, the insistence on capitulation by July 20 under threat of litigation, and Defendant's

6

access to Plaintiffs' and Putative Class members' contact information (whether obtained somehow from NOVA's list or from the VA's publicly available lists of accredited attorneys and agents), Plaintiffs request an evidentiary hearing as quickly as practicable, a ruling as quickly as practicable, and an expedited briefing schedule as necessary so that a record can be made and an appropriate order can be issued restricting Defendant from continuing these coercive, harassing, and deceptive settlement communications. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981) (orders restricting pre-certification communications must be based on "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties").

## II.   LEGAL STANDARD

Both the Supreme Court and the Eleventh Circuit have determined that district courts can oversee communications with putative class members if such communications affect the claims advanced in the litigation. Because of the potential for abuse, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* at 100. And in general, district courts bears the responsibility under Rule 23(d) to preserve the integrity of the class action. *Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir. 1985).

Courts therefore have "ample discretion" to prohibit "unilateral, unsupervised communications with prospective class members" under Rule 23(d). *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1272 (11th Cir. 2017). That discretion must be exercised within the First Amendment's bounds, and so the Supreme Court has explained that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. But as the Eleventh Circuit has emphasized, "[i]n the realm of litigation, a fair and just result often presupposes restraints on the speech of the parties," *Kleiner*, 751 F.2d at 1206, particularly when there has been "a purposeful attempt to communicate with putative class members," *Jones*, 866 F.3d at 1272.

Following these principles, the Eleventh Circuit requires courts to evaluate the existence of good cause for an order restricting such communications by looking to "the severity and the likelihood of the perceived harm; the precision with which the order is drawn; the availability of a less onerous alternative; and the duration of the order." *Kleiner*, 751 F.2d at 1206. In turn, Florida district courts often require "an evidentiary showing of actual or threatened abuse sought to be restrained," entailing a demonstration "that a particular form of communication has occurred or is threatened to occur" and "that the particular form of communication at issue is

abusive in that it threatens the proper functioning of the litigation." *Taaffe v. Robinhood Mkts., Inc.*, No. 8:20-cv-513-T-36SPF, 2020 U.S. Dist. LEXIS 55980, at *7 (M.D. Fla. Mar. 31, 2020) (quoting *Abdul-Rasheed v. KableLink Communs, LLC*, No. 8:13-cv-879-T-24MAP, 2013 U.S. Dist. LEXIS 159632, at *15-16 (M.D. Fla. Nov. 7, 2013). Accordingly, communications with class members which have been found to justify a protective order under Rule 23 include: (1) misleading communications to class members regarding the litigation, (2) communications that misrepresent the status or effect of the pending action, (3) communications that coerce prospective class members into excluding themselves from the litigation, and (4) communications that undermine cooperation with or confidence in class counsel. *See Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632 (N.D. Tex 1994); *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 699 (S.D. Ala. 2003).

In addition, Florida Rule of Professional Conduct 4-4.2(a) orders that a lawyer who is representing a client "must not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." *See also* LR 11.1(G)(1) (requiring attorneys to "comply with the [Florida] Rules of Professional Conduct"). Along with its Rule 23(d) authority to issue a protective order, "[a] court has inherent authority 'to prohibit or remedy litigation practices which raise ethical

concerns or may constitute ethical violations.'" *C.H. v. Sch. Bd.*, 476 F. Supp. 3d 1214, 1223 (N.D. Fla. 2020) (quoting *Chancellor v. Boeing Co.*, 678 F. Supp. 250, 253 (D. Kan. 1988)).

## III.   ARGUMENT

Good cause exists for the Court to issue a protective order requiring retraction of the July 3 Letter and prohibiting Defendant from further misleading and coercive communication concerning the subjects and claims of this litigation with named Plaintiffs and Putative Class members, as well as a corrective communication.

The July 3 Letter is a unilateral, unsupervised, and purposeful communication with Putative Class Members, an improper *ex parte* communication with the named Plaintiffs, and a violation of Florida Rule of Professional Conduct 4-4.2(a) to boot. The communication, which has already occurred, threatens the proper functioning of this litigation because it advances misleading arguments about the underlying facts in dispute in this case, entreats the named Plaintiffs and Putative Class members to enter into broad agreements that would harm their rights in this case, and appears to be engineered to undermine confidence in Putative Class counsel and the lawsuit as a whole. So, the Court would act well within its discretion to prohibit this and further communications by Defendant to Plaintiffs and Putative Class Members that concern the subjects and claims involved in this case and attempt to coerce Plaintiffs and Putative Class members into releasing claims in this case.

First, the July 3 Letter included pages of misleading communications to Plaintiffs and Putative Class members regarding the subject matter of this litigation. The Lanham Act claim Plaintiffs bring maintains that Defendant falsely advertises the nature and characteristics of its services, including by representing that it does not prepare, present, or prosecute claims for veterans' disability compensation. ECF No. 69, ¶¶ 2, 25-27, 30, 67-69. But nearly 18 months after that claim was first brought, Defendant's counsel of record in this litigation communicated at length about Defendant's view of this litigation, as well as the nature and characteristics of its services with hundreds, if not thousands, of Putative Class members—and the named Plaintiffs. For instance, when the July 3 Letter stated that Defendant does not "prepare, present, or prosecute claims," "complete VA claims forms," or "file VA claims paperwork," it necessarily implicated the facts and claims at issue in this litigation. Ex. 1 at 3. When the July 3 Letter discussed Defendant's view that the nature and characteristics of its services "do not qualify as preparation, presentation, and prosecution of claims," it again necessarily implicated the facts and claims at issue in this litigation. Ex. 1 at 3.

For all of the reasons Plaintiffs' operative Complaint articulates, these statements about the nature and characteristics of Defendant's services were misleading. ECF No. 69, ¶¶ 25, 27-29, 34, 43. Indeed, as the attached declaration from a veteran that used Defendant's services makes clear, despite Defendant's

claim it is not preparing, presenting, or prosecuting claims, by any objective definition, that is precisely what it is doing. *See* Ex. 2. Defendant is collecting medical and service treatment evidence, selecting, drafting and completing the VA's disability forms, and filing those same VA forms with the VA for the veteran. Ex. 2, ¶¶ 5-16.[2]

Certainly, the ultimate resolution of whether Defendant misleadingly represents the nature and characteristics of its services is bound up with the merits of the case. But that is for the Court to decide, based on the evidence to be adduced—not for Defendant to try and persuade Plaintiffs and Putative Class members "outside of the public courts." Ex. 1 at 6. After all, in the Eleventh Circuit, putative class members must "receive accurate and impartial information regarding the status, purposes and effects of the class action" so as not to "sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal." *Kleiner*, 751 F.2d at 1202-03.

Any argument by Defendant that the July 3 Letter was entirely distinct from

---

[2] Exhibit B of the Declaration of Donald Hixson is being filed as a placeholder on the public docket pursuant to Local Rule 5.5(B) because nearly every page of Exhibit B to the Declaration contains personal identifiable information and/or sensitive medical information protected by Florida Statute § 394.4615. Plaintiffs are not filing a redacted version of Exhibit B. Plaintiffs will file Exhibit B to the Declaration under seal without filing a redacted exhibit (LR 5.5(D)(2) states: "[f]iling a redacted version is feasible unless: (2) the redacted version would include so little information that publicly filing it would serve no purpose").

the facts and claims at issue in this case is unavailing. So too for any contention that Florida Rule of Professional Conduct 4-4.2(a) was not violated because Defendant's counsel communicated with represented persons ostensibly "concerning matters outside the representation." Fla. Bar R. 4-4.2, cmt.

At the outset, the July 3 Letter refers directly to this case, calling it a "baseless lawsuit." Ex. 1 at 6. If the July 3 Letter were not intended to implicate this case, there would have been no reason to mention it.[3] *Cf. Jones*, 866 F.3d at 1273 (finding no Rule 4-4.2(a) violation in part because the communication at issue did not mention the pending lawsuit). The documents Defendant demands from the July 3 Letter's recipient include (and are expressly not even limited to) "all documents . . . that mention or refer to Trajector Medical" and "all communications with law firms or other entities regarding Veteran services," which necessarily cover documents that are part of this case. Ex. 1 at 6. The July 3 Letter "expressly reserve[s]" "any of [Defendant's] rights, remedies, and arguments," language that necessarily covers those at issue in this case. Ex. 1 at 7. And over and over, the July 3 Letter presents argument about the nature and characteristics of Defendant's services: the key topic of this case.

If Defendant genuinely wishes to enforce distinct rights against entities not

---

[3] The potential argument that because the July 3 Letter discusses "claims sharks" at length, it is somehow totally separate from this case, is perplexing given that Plaintiffs used that term in a previous version of their pleading. *See* ECF 32, ¶ 7.

13

party to this litigation, it would be no stretch for it to craft a narrowed letter that does just that, and only that. But that is not what the July 3 Letter did. Consequently, a protective order is warranted. *See generally C.H.*, 476 F. Supp. at 1223 (issuing order after concluding that attempts to draw distinctions between the objectionable communication and the subject of the litigation were "simply not tenable").

Second, the July 3 Letter employed broad, threatening, and coercive language in hopes of extracting settlement agreements and releases from Putative Class members—and the named Plaintiffs—that by the July 3 Letter's own broad terms, would encompass the claims at issue in this case and effectively exclude them from the litigation. An agreement to stop "characterizing Trajector Medical and its services as" "illegal" or "misleading" would effectively remove the ability to participate as a plaintiff in this case because such actions are at the heart of the case. Ex. 1 at 6. An agreement to require the named Plaintiffs and Putative Class members to accept that Defendant "do[es] not prepare, present or prosecute claims" would undermine the claims the named Plaintiffs and Putative Class members advance in this case. Ex. 1 at 6. And an agreement to cease "interfering" with Defendant's business, "or coordinating with others" to do so through "any . . . means," could easily be read to likewise curtail the ability to for the named Plaintiffs and Putative Class members to liaise with counsel and otherwise meaningfully participate in this case. Ex. 1 at 6.

14

Moreover, both the substance of these abusive proposals and the manner in which they were delivered justify a protective order. Defendant's counsel demanded that Putative Class members—and the named Plaintiffs—respond to this coercion within 17 days, threatening tort suits if they do not comply on its terms. These abusive actions threaten the proper functioning of the litigation. And Defendant's counsel communicated *ex parte* with a represented party, an ethically impermissible action under Florida Rule of Professional Conduct 4-4.2(a). Acting in violation of the ethical rules governing attorneys' conduct necessarily threatens the proper functioning of litigation. Preventing a party's counsel from violating Florida Rule of Professional Conduct 4-4.2(a), and remedying past violations, could not interfere with that party's rights, further justifying a protective order. *See, e.g.*, *C.H.*, 476 F. Supp. at 1222-24 (issuing protective order after finding a Rule 4-4.2(a) violation).

Third, the July 3 Letter appears calculated to undermine confidence in Putative Class counsel and the lawsuit as a whole. From its description of this case as "baseless," to twice listing "law firms" as parties to ostensibly illegal conduct, to its mention of a set of "ethical attorneys," and to alluding to a "top firm in this space" that has allegedly "settled" with Defendant, the July 3 Letter's language could have the readily foreseeable effect of seeding doubt on the part of Putative Class members in Putative Class counsel. Avoiding any such doubt would preserve the proper functioning of the litigation and constitute further good cause for a protective order.

Finally, appropriately targeted relief is available to remedy the severe and likely effects of Defendant's communication including a corrective communication that addresses the misleading and improper statements in the July 3 Letter. The Court may readily craft an order that appropriately balances the need for a limitation and any potential interference with Defendant's rights. *See, e.g., id.* at 1224-25 ("[T]he Court will preclude . . . counsel from engaging in any further communications [with the opposing party] regarding *any* fact which may in *any way* relate to the matters in this litigation.").

## IV.  CONCLUSION

Accordingly, Plaintiffs request an order from this Court:

1. Prohibiting Defendant, its representatives, and its counsel from contacting named Plaintiffs *ex parte* concerning the subject matter of and claims advanced in this litigation for the remainder of this litigation;

2. If and when the Putative Class is certified, prohibiting Defendant, its representatives, and its counsel from contacting Class members *ex parte* concerning the subject matter of and claims advanced in this litigation for the remainder of this litigation;

3. Prohibiting Defendant, its representatives, and its counsel from sending any other communication to Plaintiffs or Putative Class (or Class) members without this Court's prior approval; and

4. Requiring Defendant to promptly send a mutually agreeable Court-approved corrective notice to all July 3 Letter recipients retracting the July 3 Letter and the offer to enter into releases with any recipient.

## Certificate of Conference LR 7.1(B)

On July 7 and 8, 2025, Plaintiffs and Defendants exchanged letters discussing the July 3 Letter. On July 9, Plaintiffs conferred with Defendant through counsel via Zoom call and expressed an intent to file the present motion. On July 10, Plaintiffs requested updates on Defendant's position regarding the relief this motion seeks by email, and Defendant responded. On July 11, Plaintiffs again requested updates on Defendant's position regarding the relief this motion seeks by email; on July 18, Defendant responded. The parties have been unable to come to an agreement regarding this motion.

## Certificate of Word Count LR 7.1(F)

I hereby certify that this Motion is [3,910] words as calculated by Plaintiffs' counsel's word-processing system and is within the 8,000-word limit.

Date: July 18, 2025					Respectfully submitted,

**VARNELL & WARWICK P.A.**

/s/ Christopher J. Brochu
Brian W. Warwick; FBN: 0605573
Janet R. Varnell; FBN: 0071072
Christopher J. Brochu; FBN: 1013897
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*cbrochu@vandwlaw.com*
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*ckoerner@vandwlaw.com*

William H. Anderson*
Colo. Bar No. 45960
**HANDLEY FARAH & ANDERSON PLLC**
1434 Spruce Street, Suite 301
Boulder, CO 80302
(303) 800-9109
*wanderson@hfajustice.com*

Simon Wiener*
N.Y. Bar No. 5776934
**HANDLEY FARAH & ANDERSON PLLC**
33 Irving Place
New York, NY 10003
(202) 921-4567
*swiener@hfajustice.com*

Tola Oyeyemi*
D.C. Bar No. 90008687
**HANDLEY FARAH & ANDERSON PLLC**
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
(771) 210-5554
*toyeyemi@hfajustice.com*

*Admitted Pro Hac Vice

*Counsel for Plaintiffs and the Putative Class*

## **Certificate of Service**

I hereby certify that on July 18, 2025, a copy of the foregoing document was filed using CM/ECF, which will serve an electronic copy on all counsel of record.

/s/ Christopher J. Brochu
Christopher J. Brochu
