# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

WARRIORS AND FAMILY
ASSISTANCE CENTER LLC,
TONYA PRICE, MANRING &
FARRELL ATTORNEYS AT LAW,
and CLIFFORD FARRELL,
individually and on behalf of all
others similarly situated,

               Case No: 1:23–cv–290–AW–HTC

              *Plaintiffs*,

    v.

TRAJECTOR MEDICAL LLC f/k/a
VET COMP & PEN MEDICAL
CONSULTING LLC,

              *Defendant*.

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO AMEND (ECF NO. 123)
AND IN SUPPORT OF PLAINTFFS' MOTION TO SEAL (ECF NO. 124)**

## PRELIMINARY STATEMENT

Two years into this case and months after the Scheduling Order's deadline to amend (ECF No. 79 ¶ 7), Plaintiffs seek leave to file a fourth, almost entirely rewritten, amended complaint that would add a new plaintiff and putative class (the VFW and a VSO class), add seven defendants (including three individuals previously dismissed), expand the class period, and assert five new claims, including three civil RICO counts and a declaratory-judgment claim. Rule 16 is the gatekeeper. Plaintiffs must show that – despite diligence – they could not have met the deadline to amend. Then, under Rule 15, Plaintiffs must show that amendment is not futile, prejudicial, unduly delayed, or brought in bad faith. Plaintiffs have failed to make either showing.

The relationships Plaintiffs allege among the proposed new defendant entities have been public since Trajector, Inc. filed its 2021 SEC S-1 statement, which Plaintiffs have cited in each of their prior complaints. Plaintiffs repeatedly invoked VSOs and the VFW in earlier pleadings and hearings. And even accepting Plaintiffs' account – which attempts to sweep under the rug the above-referenced history – they waited months after receiving both the documents (produced June 17) and letters (received on July 3) they invoke to amend. Plaintiffs' lack of diligence ends the Rule 16 inquiry.

Plaintiffs also fail Rule 15: the proposed amendments are futile and prejudicial. Plaintiffs' civil RICO theories improperly attempt to recast alleged VA regulatory noncompliance as mail/wire fraud, and fall far short of Rule 9(b)'s heightened pleading standard. The contributory false advertising count fails to plausibly allege knowing inducement or material participation. The proposed complaint also repeats the very shotgun pleading defects this Court has twice rejected when dismissing Plaintiffs' prior pleadings. And, even if Plaintiffs' new theories were sound, allowing these late, sweeping amendments would materially disrupt the case schedule, requiring additional discovery across new claims, new parties, and an expanded class period.

The Court should deny leave under Rule 16 and under Rule 15 (which the Court need not reach). If any amendment is permitted, the Court should, at a minimum, (*i*) condition dismissal of Plaintiffs WFAC and Price on completion of their custodial productions and depositions; (*ii*) strike the expanded class period; and (*iii*) stay discovery on any new parties or claims until the pleadings are settled.

## BACKGROUND

### A.    Plaintiffs' Prior Failed Complaints

Plaintiffs filed their original complaint on December 4, 2023, naming as defendants Trajector, Inc., Vet Comp & Pen Medical Consulting, LLC (now Trajector Medical, LLC ("Trajector Medical")), James Hill, Gina Uribe, and

Richard Blaser. (ECF No. 1.) After the Court dismissed Plaintiffs' first and second amended complaints as shotgun pleadings – warning that Plaintiffs had "one final opportunity to submit a proper complaint" (ECF Nos. 51, 65) – Plaintiffs pared the case to a single defendant, Trajector Medical, and asserted claims under the Lanham Act and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). The Court allowed two narrow advertising claims to proceed while dismissing a *per se* FDUTPA claim. (ECF No. 78.)

Throughout each iteration of the pleadings, Plaintiffs alleged facts that now form the basis for their proposed amendments. Specifically, Plaintiffs:

1. Cited Trajector, Inc.'s 2021 SEC S-1 to describe Trajector's corporate structure and business. (*E.g.*, ECF No. 1 ¶ 14(b) at n.4; ECF No. 32 ¶ 34 at n.16; ECF No. 54 ¶ 2 at n.2; ECF No. 69 at n.1.)

2. Invoked VSOs and the VFW's role in helping veterans prepare and file disability claims. (*E.g.,* ECF No. 1 ¶¶ 7, 44, 71 at n.14, and 90 at n.18; ECF No. 32 ¶¶ 11 at n.4, and 106 at n.52; ECF No. 54 ¶ 7; and ECF No. 69 ¶ 15.)

3. Alleged that Trajector's business model violated VA regulations and fee rules. (*E.g.*, ECF No. 1 ¶¶ 9–12, 15, 70, 75–78, 104–122, and 200; ECF No. 32 ¶¶ 32, 33, 36, 105–120, 164, and 201; ECF No. 54 ¶¶ 44, 57, 148, and 149; and ECF No. 69 ¶¶ 23, 31, 103, and 105.)

4. Alleged that the class period begins to run on December 4, 2020. (*E.g.*, ECF No. 1 ¶ 173; ECF No. 32 ¶ 174; ECF No. 54 ¶ 106; and ECF No. 69 ¶ 55.)

B.    <u>Discovery Posture</u>

Since the Court permitted Plaintiffs' Third Amended Complaint to proceed (ECF No. 78), the parties have exchanged multiple sets of written discovery, met and conferred several times, and litigated a motion to compel heard on July 2, 2025 (ECF No. 105). Plaintiffs' Appendix A materials were produced by Trajector Medical on June 17, 2025, and discussed at the July 2 hearing. (Declaration of Jared I. Kagan ("Kagan Decl.") ¶ 6; ECF No. 105, July 2 Tr. 19:21-30:22.) Trajector Medical has made seven productions and produced two witnesses for depositions. It requested deposition dates for Farrell and Price on July 30, August 8, and August 15; none have occurred, and no dates have been offered for Price. (Kagan Decl. ¶ 7.) Expert disclosures begin January 2026 and class briefing is set for April 2026. (ECF No. 121 ¶¶ 1–3.)

C.    <u>Plaintiffs' Motion to Amend</u>

On August 29, 2025, Plaintiffs informed Trajector Medical of their intent to move for leave to amend their complaint and requested Trajector Medical's position. (*See* Ex. 1.[1]) The same day, Trajector Medical requested a copy of the

---

[1]    All "Ex." references refer to Exhibits to the Declaration of Jared Kagan, unless otherwise indicated.

proposed amended complaint.  *Id.*  On October 2, 2025 (34 days later), Plaintiffs first shared a draft of the proposed pleading and requested Defendant's position in less than 24 hours.  Defendant was unable to provide a position within Plaintiffs' requested timeframe, and Plaintiffs filed their motion the next day.  (*See* Ex. 2.) (ECF No. 123.)

The proposed Fourth Amended Complaint is almost entirely rewritten.[2]  It drops WFAC and Price as plaintiffs; adds the VFW as a named plaintiff for a putative VSO class; adds as defendants three individuals who were previously dismissed; adds as defendants Trajector Holdings, Trajector Media Services, LLC, Globaltek BPO, LLC,[3] and Ampry Holdings, LLC; adds three civil RICO counts, a contributory false advertising count, and a declaratory-judgment claim; and expands the class period by one year prior and effectively pushes it *at least* several months forward (given that any class-certification date, however unlikely certification may be, must also shift).  (ECF No. 123-1 ("FAC").)

## ARGUMENT

The Court's Scheduling Order sets a firm amendment deadline:  "The deadline to move or amend pleadings or add parties is May 1, 2025."  (ECF No. 79

---

[2]    A redline comparing the Fourth Amended Complaint to the Third Amended Complaint is attached as Exhibit 3 to the accompanying Kagan Declaration.

[3]    Plaintiffs name "Global Tek BPO LLC," but as shown in public SEC filings, this entity's name is spelled "Globaltek BPO, LLC."  (*See* Ex. 4 at 63.)

¶ 7.)  Plaintiffs filed their motion five months after that cutoff and seek sweeping changes to the pleadings.

Rule 16 is the threshold.  Because Plaintiffs moved to amend after the scheduling-order deadline, they must show "good cause" – that the deadline could not have been met despite diligence – before the Court may reach the Rule 15 inquiry.  *See Davis v. Daniels*, No. 20-5935, 2022 WL 20539196, at *2 (N.D. Fla. Sept. 20, 2022); *EBSCO Gulf Coast Dev., Inc. v. Salas as Tr. of Salas Child. Tr. Dated Sept. 28, 2009*, No. 15-586, 2017 WL 10084358, at *1 (N.D. Fla. Dec. 9, 2017).  Plaintiffs cannot satisfy Rule 16.  Each proposed amendment also fails Rule 15 for futility, undue delay, and prejudice.  And because the proposed complaint reprises shotgun pleading defects, the entire complaint is futile even without analyzing the individual claims.

## I.    Plaintiffs Cannot Show Good Cause Under Rule 16.

Scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007) (citation omitted).  The burden rests entirely on the moving party to make a "particular and specific demonstration of fact" showing diligence; "stereotyped and conclusory statements" are insufficient.  *Peterka v. Sec'y, Fla Dep't of Corr.*, No. 24-13503, 2025 WL 2251853, at *3 (11th Cir. Aug. 7, 2025) (citing *Stansell v. Revolutionary Armed*

*Forces of Colom.*, 120 F.4th 754, 766 (11th Cir. 2024)).  If a party "was not diligent, the [good cause] inquiry should end." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).

Courts in this Circuit assess diligence by three factors:  "(1) whether the party neglected to determine facts before filing pleadings or within discovery; (2) whether the subject matter of the motion for extension was readily available to the party[;] and (3) whether the party delayed filing the motion." *Williams v. Blue Cross & Blue Shield of Fla., Inc*., No. 09-225, 2010 WL 3419720, at *2 (N.D. Fla. Aug. 26, 2010) (citing *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002)).

    A.    <u>Plaintiffs Could Have Pleaded the Proposed Amendments from the Outset.</u>

Courts consistently reject amendments based on facts a party knew or could have learned through reasonable diligence.  *See, e.g.*, *McFee v. Carnival Corp.*, No. 19-22917, 2020 WL 13389096, at *9–10 (S.D. Fla. Apr. 22, 2020) (denying leave to amend where plaintiff, with diligence, could have timely pleaded certain allegations).  Plaintiffs' proposed amended complaint invokes facts that were alleged in prior complaints, available long ago from public sources, or both. Plaintiffs' five-month delay after years of access to the same information shows lack of diligence.  Plaintiffs also seek to extend the class period by a full year without identifying *any* new facts justifying that expansion or explaining *why* their

earlier pleadings repeatedly alleged a later date. (*Compare* ECF No. 69 at ¶ 55

("The Class Period runs from December 4, 2020"), *with* FAC ¶ 116 ("The Class

Period runs from December 4, 2019").) This ends the Rule 16 inquiry.

1.    *Plaintiffs Cannot Show Good Cause to Rejoin the Previously Dismissed Individual Defendants.*

After twice trying and failing to assert claims against Mr. Hill, Ms. Uribe,

and Mr. Blaser (the "Individual Defendants"), Plaintiffs resigned to drop them, but

now seek to reassert claims against them. Plaintiffs cannot show diligence in

seeking to replead against these individuals because Plaintiffs knew the facts

underlying their new claims in 2023 when filing their original complaint.

Plaintiffs name the Individual Defendants in Count II for Contributory False

Advertising and Counts IV–VI for civil RICO. Count II is simply the latest re-

packaging of Plaintiffs' prior attempts to hold the Individual Defendants liable for

false advertising. (*See* ECF No. 1, Count II; ECF No. 32, Count I.) Likewise, the

civil RICO claims in Counts IV–VI repackage prior allegations regarding the

legality of Trajector Medical's business model. (*Compare*, ECF No. 1 ¶ 10

("Trajector Medical assesses illegal fees for assisting with initial claims; prepares,

presents, and/or prosecutes claims before the VA (often under the guise of a pro se

veteran)"), ECF No. 32 ¶ 32 ("Trajector assesses illegal fees for assisting with

initial claims; unlawfully prepares, presents, and/or prosecutes claims before the

VA"), ECF No. 54 ¶ 44 ("Trajector and VC&PMC assess illegal fees for assisting

with initial claims; unlawfully prepare, present, and/or prosecutes claims before the VA"), *and* ECF No. 69 ¶ 86 ("Trajector regularly [prepares, presents, and prosecutes VA disability claims], demanding enormous fees for its illegal work"), *with* FAC ¶ 169 ("The enterprise's purpose is to unlawfully prepare, present, and file VA disability claims without accreditation; to charge fees prohibited by 38 U.S.C. § 5904(c)(1)").)

Because Plaintiffs do not allege any new facts to support their claims, "good cause does not exist to disturb the present posture of the case with additional claims – claims that could have been timely pled – requiring further discovery and modification of the current scheduling order." *Donahay*, 243 F.R.D. at 699.

        2.     *Plaintiffs Knew or Should Have Known About the Trajector Entities They Seek to Add.*

Plaintiffs' own prior filings belie their claim that they "learned during discovery that there are additional entities that are bound up in Trajector's finances and alleged conduct." (ECF No. 123 at 6.)  The 2021 SEC Form S-1 for Trajector, Inc. – which Plaintiffs have cited in every prior complaint that they filed – clearly identifies Trajector Holdings, Trajector Media Services, and Globaltek BPO, LLC, and describes their roles within Trajector's corporate structure, consistent with Plaintiffs' allegations.[4]  (*See, e.g.*, ECF No. 1 ¶ 14(b) at n.4; ECF No. 32 ¶ 34 at

---

[4]    *See* Ex. 4, *Form S-1 Registration Statement under the Securities Act of 1933, Trajector, Inc.* (Oct. 18, 2021),

n.16; ECF No. 54 ¶ 2 at n.2; ECF No. 69 at n.1.)  To the extent Plaintiffs believe

that they have a claim against those entities based on their relationship with

Trajector Medical, Plaintiffs could have asserted those claims at the outset.

Although Ampry Holdings, LLC is not named in the SEC filing, it is a holding

company that does not conduct any business.  (Declaration of Kevin Frain ("Frain

Decl.") ¶ 3.)  Accordingly, any allegations against Ampry Holdings, LLC must

fail.  Similarly, claims against Globaltek BPO, LLC must fail because it, too, is

merely a holding company.  (Frain Decl. ¶ 4.)

3.   *Plaintiffs' Allegations Concerning the VFW and VSOs Are Based on Long-Known Facts.*

Plaintiffs cannot show diligence in adding the VFW as a named plaintiff for

a putative class of VSOs.  Although Plaintiffs assert that "Plaintiffs' counsel

quickly secured the VFW as another plaintiff who was harmed by Trajector's

conduct after Trajector recently sent a threatening letter," (ECF No. 123 at 5), facts

about the VFW's interest in this case have long been in both the VFW's and

Plaintiffs' possession.  *See Donahay*, 243 F.R.D. at 699 (finding no good cause

where the amendment "could have been timely made" and party "should have

known from the outset").

---

https://www.sec.gov/Archives/edgar/data/1875772/000119312521300749/d180168
ds1.htm, at 12, 41, 64, & 78 (Trajector Holdings, LLC); 5, 123 (Trajector Media
Services, LLC); 62 (organizational chart); 63 (Globaltek BPO, LLC).

Each of Plaintiffs' prior pleadings, for *nearly two years*, relied on the role of VSOs in the VA disability claims process, and Plaintiffs specifically identified the VFW in three of their four complaints.  (*See* ECF No. 1 ¶¶ 7, 44, 71 at n.14, and 90 at n.18; ECF No. 32 ¶¶ 11 at n.4, and 106 at n.52; ECF No. 54 ¶ 34; and ECF No. 69 ¶ 15.)  Additionally, three of Plaintiffs' pleadings cite congressional testimony from a hearing at which the VFW and other VSOs spoke about "claim-shark" companies supposedly charging illegal fees and diverting veterans from accredited representatives.  (*See* ECF No. 1 ¶¶ 1 at n.1, and 89; ECF No. 32 ¶ 141; and ECF No. 54 ¶ 1.)  Those same allegations now form the basis for Plaintiffs' proposed amendments.  (*See* FAC ¶¶ 88–110.)  Plaintiffs' attempt to recast the same allegations as "new" underscores their lack of diligence.  Rule 16 does not permit a fifth bite at the same apple, especially months after the amendment deadline.

The VFW's only conceivably "new" interest underlies its declaratory-judgment claim, which opportunistically arises out of a letter that Trajector Medical's outside counsel sent to the VFW on July 3, 2025.  (FAC ¶ 221 & FAC Ex. D.)  But that count is unrelated to Trajector Medical's allegedly false advertising at issue in this lawsuit.  Any declaratory relief claim arising from Trajector Medical's business defense – whether brought by the VFW or Farrell and MFAL – belongs in a separate lawsuit.  *Pilkington v. United Airlines, Inc*., 158

F.R.D. 508, 509 (M.D. Fla. 1994) (denying leave to amend where proposed amendments were based on "separate incidents" that "rais[ed] new legal issues").

    B.    <u>Plaintiffs Delayed Three Months After Receiving the Cited Discovery and the July 3 Letters.</u>

Even accepting Plaintiffs' premise that the June 17 production and July 3 letter supplied new information that is germane to this case, the three-month gap before moving to amend demonstrates a lack of diligence. The documents Plaintiffs cite in Appendix A were produced on June 17, 2025, and Plaintiffs discussed those same materials at the July 2, 2025 hearing on their motion to compel. (Kagan Decl. ¶ 6; July 2 Tr. 19:21-30:22.) The July 3 letter that Trajector Medical's counsel sent was delivered that same day. (*See* FAC Ex. C.) Yet Plaintiffs waited until October 3, 2025 – three months (or 92 days) later – to seek leave to amend. Courts consistently deny leave to amend for shorter delays. *See, e.g.*, *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1314 (11th Cir. 2002) (approximately two-month delay); *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 787 F. Supp. 3d 1292, 1295 (N.D. Fla. 2024) (six-to-eight-week delay); *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 655 (N.D. Ga. 2008) (approximately two-month delay).

Plaintiffs' comparison to *Yoder v. Florida Farm Bureau*, No. 19-70, 2020 WL 10965920 (N.D. Fla. Oct. 30, 2020), is misplaced. (*See* ECF No. 123 at 7.) In

*Yoder*, the movant acted within 59 days of a newly issued federal rule. Here, in contrast, Plaintiffs delayed nearly a full month longer.

The Court should not reward Plaintiffs' "strategic choice" to devote resources to their failed motion for a protective order rather than diligently bringing their Motion to Amend. (ECF No. 107.) *See Donaldson v. Carnival Corp.*, No. 20-23258, 2021 WL 65445, at *1 (S.D. Fla. Jan. 7, 2021) (denying leave after "strategic choice" not to move when information underlying the amendment became available). "Permitting another round of amendments at this point, would unduly protract these proceedings and promote judicial inefficiency." *Id.* (citation modified) (citing *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016)).

## II.    Plaintiffs Are Not Entitled to Amend Under Rule 15.

If the Court analyzes Rule 15, it should find the proposed amendments are futile, unduly delayed, and prejudicial. *See Carruthers v. BSA Advert., Inc*., 357 F.3d 1213, 1218 (11th Cir. 2004) (denial grounds include "undue delay, undue prejudice to the defendants, and futility of the amendment") (citing *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003)). Any one ground suffices to deny Plaintiffs' motion. Several apply.

A.    <u>Plaintiffs' Proposed Civil RICO Amendments Are Futile.</u>

"An amendment is futile when the complaint as amended would still be subject to dismissal." *Jastrjembskaia v. inCruises, LLC*, No. 23-12601, 2024 WL 5244786, at *7 (11th Cir. Dec. 30, 2024).  To state a claim for a RICO violation, "[p]laintiffs must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Penton v. Centennial Bank*, No. 18-450, 2021 WL 8014675, at *6 (N.D. Fla. July 30, 2021) (Winsor, J.) (citing *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019)).  To establish a pattern, "RICO requires at least two qualifying predicate acts, each of which must constitute a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." *Id.*  Civil RICO plaintiffs must also establish "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (citing *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282–83 (11th Cir. 2006), *abrogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714–15 (11th Cir. 2014)).

A civil RICO conspiracy claim requires either (1) "showing that the defendant agreed to the overall objective of the conspiracy" or (2) "showing that the defendant agreed to commit two predicate acts." *Est. of Lambou v. Sketchley*

*L. Firm*, No. 24-228, 2025 WL 1807475, at *19 (N.D. Fla. June 24, 2025) (citing

*Otto Candies, LLC v. Citigroup, Inc.*, 137 F.4th 1158, 1201 (11th Cir. 2025)).

Plaintiffs assert three civil RICO counts.  All fail for multiple, independent

reasons.

### 1.    *Alleged Regulatory Non-Compliance Is Not RICO Fraud.*

Plaintiffs attempt to convert alleged VA regulatory violations into

wire/mail-fraud predicates.  (*See, e.g.*, FAC ¶¶ 169, 176–179, 189, 194–97, 217.)

But "it would be inconsistent with Congressional intent and incompatible with

regulatory scheme to allow a private actor to use a civil RICO claim, with the

prospect of treble damages, to enforce the VA regulations."  *Brown v. First*

*Tennessee Bank Nat. Ass'n*, 753 F. Supp. 2d 1249, 1257 (N.D. Ga. 2009); *see also*

*Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 522–25 (11th Cir. 2000) (alleged

violations of the National Highway Traffic Safety Administration's Safety Act

cannot be converted into mail/wire fraud predicates to support a civil RICO claim);

*McCulloch v. PNC Bank Inc*., 298 F.3d 1217, 1226–27 (11th Cir. 2002) (alleged

violations of the Department of Education's Higher Education Act cannot be

converted into mail/wire fraud predicates to support a civil RICO claim).

Alleged noncompliance with VA accreditation and fee rules – even if proven

– does not constitute the sort of predicate criminal conduct RICO was enacted to

address, and, as discussed below, Plaintiffs plead no particularized

misrepresentation, intent to defraud, or reliance, which Rule 9(b) requires.

> 2.    *The RICO Claims Do Not Satisfy Rule 9(b).*

A civil RICO claim based on wire or mail fraud "must comply with Federal

Rule of Civil Procedure 9(b)'s heightened pleading standard, requiring the plaintiff

state, with particularity, the circumstances constituting fraud or mistake." *GolTV,*

*Inc. v. Fox Sports Latin Am., Ltd.*, No. 16-24431, 2018 WL 1393790, at *13 (S.D.

Fla. Jan. 26, 2018) (citing *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482

F.3d 1309, 1316 at n.10 (11th Cir. 2007), and *Durham v. Business Mgmt. Assocs.*,

847 F.2d 1505, 1511–12 (11th Cir. 1988)).  Rule 9(b) requires plaintiffs to allege

the precise statements made, when and by whom they were made, how they

misled, and what defendants gained.  *Brooks v. Blue Cross & Blue Shield of Fla.,*

*Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997).

Plaintiffs neither identify the who/what/when/where/how of any specific

mailing or wire, nor plausible third-party reliance.  Generalized allegations that

veterans and the VA were misled (FAC ¶¶ 78–87) are insufficient, particularly

where Plaintiffs allege *third-party* reliance without plausible allegations to support

a finding that any third party relied on the supposed misrepresentations.  *See Ray*,

836 F.3d at 1350 (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658

(2008)) (a RICO claim cannot survive "without showing that someone had relied

on the fraud"). Plaintiffs' speculation that the VA would have "rejected" forms if it knew of Trajector's role (*e.g.*, FAC ¶¶ 86, 178) is contradicted by the VA's statutory obligation to adjudicate claims regardless of the accreditation status of who prepared the claim. *See* 38 U.S.C. § 5103A; *see also* 38 C.F.R. § 3.159.

Plaintiffs' RICO conspiracy claim is devoid of any substance from which the Court could find anything but a threadbare recitation of the elements of the claim. (*See* FAC Count VI.) "[W]hen the allegations of a conspiracy are 'merely conclusory and unsupported by any factual allegations,' the conspiracy claim is not adequately pled." *Est. of Lambou*, 2025 WL 1807475, at *19 (citing *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989)).

          3.     *Plaintiffs Fail to Plead a Viable Association-in-Fact Enterprise.*

In Count IV, Plaintiffs allege that Trajector Medical, Trajector Media Services, LLC, Ampry Holdings, LLC, Globaltek BPO, LLC, and Trajector Holdings, LLC form an association-in-fact enterprise that supports their civil RICO claim. But Plaintiffs fail to allege a common purpose for the enterprise separate and apart from the ordinary operation of the companies in the Trajector corporate family.

The Eleventh Circuit has made clear that allegations like Plaintiffs' fail to plead an enterprise-in-fact. In *DJ Lincoln Enterprises, Inc. v. Google LLC*, the Eleventh Circuit affirmed dismissal of RICO claims against Google because

plaintiff had "fail[ed] to explain how Alphabet, Inc. (the parent company of Google), YouTube (which is owned by Google), or any of the individuals associated with those organizations, operated outside their official capacity." No. 21-12894, 2022 WL 203365, at *2 (11th Cir. Jan. 24, 2022) (citing *Ray*, 836 F.3d at 1355). As a result, the court concluded that the plaintiff "fail[ed] to allege that these entities and individuals are distinct from Google for RICO purposes." *Id.* Likewise, Plaintiffs allege that the Individual Defendants and the entities that comprise a RICO association-in-fact enterprise are committing a fraud by operating *within* their ordinary corporate roles. (*See* FAC ¶¶ 171–175.) This is fatal to Plaintiffs' claim.

> 4.    *Plaintiffs' Legal Entity Enterprise Claim Is Inconsistent with Plaintiffs' Allegations.*

Count V – premised on a "legal entity" theory "in the alternative" to Count IV – also fails to plead a RICO enterprise. In one breath, Plaintiffs allege that several distinct entities – Trajector Media, Globaltek, Ampry Holdings, and Trajector Holdings – are responsible for carrying out aspects of the alleged racketeering (FAC ¶¶ 32–51, 56, 165–176, 192), and in the next they allege that Trajector Medical alone is the RICO enterprise, (FAC ¶¶ 185–191, 193–194). This internal contradiction is fatal to Plaintiffs' claim because the allegations supporting the enterprise-in-fact claim are admissions that Trajector Medical does not operate

as the unlawful legal entity as described in Count V. Plaintiffs cannot escape this contradiction by pleading "in the alternative."

A RICO claim requires that an enterprise *itself* engage in predicate acts that form a pattern of racketeering. *See Penton*, 2021 WL 8014675, at *6 (RICO requires "(1) conduct (2) ***of an enterprise*** (3) through a pattern (4) of racketeering activity"). Because the Fourth Amended Complaint attributes the alleged racketeering conduct – soliciting veterans, collecting data, preparing medical documentation, and transmitting claims – to other Trajector entities rather than to Trajector Medical, Count V fails to plausibly allege that Trajector Medical is a RICO enterprise in and of itself.

     5.    *Plaintiffs Fail to Allege an Injury "By Reason of" the Alleged Pattern of Racketeering.*

Plaintiffs fail to adequately plead an injury "by reason of" the alleged fraud. This element "requires that plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity . . . was the but-for <u>and</u> proximate cause of the plaintiffs' injuries." *Ray*, 836 F.3d at 1349 (emphasis in original). Proximate cause asks "whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Boiled down, Plaintiffs' theory of causation is that each Trajector Medical customer is a customer that rightfully belongs to Plaintiffs. That is illogical because: (*i*) Trajector Medical's and Plaintiffs' services are complementary;

overlap between the parties' active customer base may (and in fact does) exist (*see* ECF No. 70 at 14–15); (*ii*) many veterans file disability claims without assistance whether or not they use a medical evidence service because claims filing is simple (*see* FAC ¶¶ 23–24); (*iii*) Trajector Medical and Plaintiffs assist customers at different stages of the claims process (*see* ECF No. 70 at 14–15); and (*iv*) veterans may choose not to employ Plaintiffs for unrelated reasons, including dissatisfaction with Plaintiffs' past services, personal preferences, or Plaintiffs' reputations.

    B.    <u>The Contributory False Advertising Claim Is Conclusory and Implausible.</u>

To state a claim for contributory false advertising, "a Plaintiff must allege more than an ordinary business relationship between the defendant and the direct false advertiser in order to plausibly plead its claim." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015). In addition to showing that a third party engaged in false advertising that injured the plaintiff, the plaintiff must plausibly plead that "the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Duro Beam, LLC v. Manning*, No. 24-81550, 2025 WL 2416413, at *3 (S.D. Fla. Aug. 21, 2025), *report and recommendation adopted*, No. 24-81550, 2025 WL 2576706 (S.D. Fla. Sept. 5, 2025).

Plaintiffs' contributory liability claims rest upon the conclusory allegations that (1) Ms. Uribe must be "fully aware of the legal prohibitions on preparing

disability claims without accreditation" because she once worked for the VA;

(2) Ms. Uribe supposedly "conveyed that information to her partner, Defendant

Hill"; and (3) as a result, *all three* of Ms. Uribe, Mr. Hill, *and* Trajector Holdings

"materially contributed to the false advertising done by Trajector Medical."[5]  (FAC

¶¶ 146–149.)  Plaintiffs then ramble off a litany of conclusory allegations about

how Mr. Hill, Ms. Uribe, and Trajector Holdings "actively and materially

furthered" Trajector Medical's alleged false advertising.  (FAC ¶ 149.)  Parroting

standards for contributory liability, however, is no substitute for plausible, factual

allegations.  *See Duro Beam*, 2025 WL 2416413, at *3.

     C.    <u>Farrell and MFAL Lack Standing for a Declaratory Judgment.</u>

Farrell and MFAL's declaratory-judgment claim fails to present a justiciable

controversy.  "[A] threshold question in an action for declaratory relief must be

whether a justiciable controversy exists."  *Zurich Am. Ins. Co. v. S.-Owners Ins.*

*Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017) (citing *U.S. Fire Ins. Co. v.*

*Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991)).  A party who

brings a claim for declaratory relief must show "(1) that they personally have

suffered some actual or threatened injury as a result of the alleged conduct of the

defendant; (2) that the injury fairly can be traced to the challenged action; and

---

[5]    Plaintiffs name Richard Blaser in the heading for this Count, but include no allegations against Mr. Blaser for contributory false advertising.

(3) that it is likely to be redressed by a favorable decision." *Id*. A justiciable controversy "must be 'live' throughout the case." *Id.* To have standing, a party seeking declaratory relief must also show a "substantial likelihood that he will suffer injury in the future." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210–11 (11th Cir. 2019) (citing *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).

Farrell and MFAL show no live controversy. Unlike the VFW, who received a letter directly addressed to it demanding it cease specific conduct (FAC Ex. D), these plaintiffs rely on a mass-mailing that allegedly threatened litigation if "he or others continued to say" that Trajector Medical prepares VA disability claims. (FAC ¶ 222 (citing FAC Ex. C).) In essence, they seek an advisory ruling that, *if* Trajector Medical ever sues them for defamation, tortious interference, civil conspiracy, or antitrust violations, their statements would be protected. (*See* FAC ¶ 230.) That is a request for "an impermissible advisory opinion on a matter that is not ripe." *Carroll v. White*, No. 16-229, 2016 WL 7238914, at *5 (M.D. Ala. Nov. 21, 2016), *report and recommendation adopted*, No. 16-229, 2016 WL 7234090 (M.D. Ala. Dec. 14, 2016).

The July 3 letter creates no credible threat to Farrell and MFAL. It identifies no actionable conduct by them (*see* FAC Ex. C; Sept. 23 Tr. at 39:09-22), and, by its terms aims "to foster a collaborative relationship with accredited attorneys and

agents, along with Veteran Service Organizations (VSOs) and their representatives, to ensure we can collectively continue to provide essential and beneficial services to Veterans." (FAC Ex. C at 2.) Even accepting Plaintiffs' characterization of the July 3 letter to Farrell and MFAL as a "cease and desist" letter, any "threat" of litigation is speculative, and "a 'perhaps' or 'maybe' chance that a lawsuit will be filed in the future is insufficient to establish standing." *L'Atelier Paris Haute Design LLC v. Officine Gullo, Inc.*, No. 21-22889, 2022 WL 2197616, at *3 (S.D. Fla. June 20, 2022) (citation modified) (citing *Owners Ins. Co. v. Parsons*, 610 F. App'x 895, 897 (11th Cir. 2015) (cease and desist letter did not create standing).

Because their individual claims fail, Farrell and MFAL cannot represent an "Accredited Individuals" class. *See A&M Gerber*, 925 F.3d at 1211–12 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class")).

### D.    The Fourth Amended Complaint Is a Shotgun Pleading, Again.

The FAC repeats the same defects this Court identified in dismissing Plaintiffs' prior complaints as shotgun pleadings (ECF No. 51 at 1; ECF No. 65 at 1), including:

1.     ***Incorporating the same 125 paragraphs into every count***, (FAC ¶¶ 126, 143, 154, 165, 183, 216, 220), which is akin to "the 'mortal sin' of re-alleging 'all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.'" *Duro Beam*, 2025 WL 2416413, at *7.  A complaint is also a shotgun pleading when it "conflates multiple and inconsistent theories of liability into the same count." *Incardone v. Royal Carribean Cruises, Ltd.*, No. 16-20924, 2019 WL 2709810, at *8 (S.D. Fla. June 28, 2019).  This Court specifically cautioned Plaintiffs against such conduct, finding Plaintiffs' Second Amended Complaint "still lack[ed] specificity about which Defendant did what," where Plaintiffs had "incorporate[d] the same 100+ paragraphs of factual allegations into each claim" even though "the claims – at least some of them – are quite different."  (ECF No. 65 at 2, 4.)  This pleading failure also triggers a Rule 9(b) spillover problem that the Court previously warned about:  "by offering the identical factual basis for all claims – including one that necessarily does invite 9(b) – Plaintiffs have arguably made Rule 9(b) applicable to all claims." (ECF No. 65 at 5–6.)

2.     ***Mismatched headings and bodies***.  For example, Count II's heading identifies "Trajector Holdings; James S. Hill II; Gina G. Uribe; and Richard Blaser" as defendants, but the body alleges nothing about Mr. Blaser.  (FAC

¶¶ 143–153.)  Likewise, the heading of Count VI states that it is brought against "Trajector Medical; Trajector Holdings; Trajector Media; [Globaltek BPO]; Ampry Holdings; James S. Hill; Gina G. Uribe; and Richard Blaser." But the only defendants listed in the body of the count are Mr. Hill, Ms. Uribe, and Mr. Blaser.  (FAC ¶ 217.)

3.    ***Blanket statements about "Defendants."***  The Fourth Amended Complaint is riddled with blanket accusations about what "Defendants" have done, without specifying which defendant engaged in what conduct.  (*E.g.*, FAC ¶¶ 178–179, 201, 211.)

With eight defendants, these structural defects create a complaint that does not clarify who performed which act or which count applies to whom.  As the Court previously explained:  "A complaint is a shotgun pleading when it asserts 'multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'"  (ECF No. 51 at 1–2 (citing *Weiland v. Palm Beach Cnty. Sherrif's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)).)

The complaint fails to give defendants adequate notice, and will "waste scarce judicial resources" and "broaden the scope of discovery."  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *see also supra*

Section II(A)(1)–(2) (discussing Rule 9(b) standard). The Court should deny leave on this independent basis.

E.    Plaintiffs' Undue Delay Warrants Denial.

"Undue delay is a legitimate reason for the district court to refuse to grant leave to amend." *Poole v. Wichard, Inc.*, No. 21-12806, 2022 WL 2903400, at *3 (11th Cir. July 22, 2022). Delay is undue where "the facts supporting the proposed [amendment] were known at the time of the original [pleading]," *Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 249 (11th Cir. 1982), and when a party learns new information but waits an unreasonable amount of time to act. *See Maynard v. Bd. of Regents*, 342 F.3d at 1287; *see also Carruthers*, 357 F.3d at 1218 ("tardiness constitutes undue delay"). To assess undue delay under Rule 15, courts consider "the amount of time movant delayed in seeking to amend the complaint upon learning of the claim." *Lesman v. Specialized Loan Servicing, LLC*, No. 14-02006, 2015 WL 13774251, at *4 (N.D. Ga. Jan. 12, 2015) (citing *Fla. Evergreen Foliage v. E.I. DuPont de Nemours & Co.*, 470 F.3d 1036, 1041–42 (11th Cir. 2006)).

The fact that Plaintiffs possessed the information underlying their proposed amendments at the outset of the litigation is sufficient to reject their RICO claims. In *Penton v. Centennial Bank*, this Court found the plaintiff's civil RICO claims untimely because the plaintiff failed to seek leave to amend until three months after

27

obtaining testimony that supposedly provided the basis for the claim. *Penton*, 2021 WL 8014675, at *5. The thrust of the civil RICO claim had been part of the case since the beginning. *Id.* While the testimony gathered during discovery may have added detail to the plaintiff's allegations, it was not fundamental to the civil RICO claim. *Id.* This Court's concerns about undue delay were heightened because the plaintiff sought to add five new defendants, which would "effectively put the case back at square one." *Id.*

Where, as here, "the whole thrust of the alleged fraud . . . has been part of th[e] case from the beginning[,] . . . delay provides good cause to deny leave to amend." *Id.* The fact that discovery may have "added detail" to Plaintiffs' allegations is not enough to find amendment timely because the details in the financial statements are "by no means the linchpin to a RICO claim that did not exist before." *Id.* Even accepting the July 3 letter and the documents cited in Plaintiffs' Appendix A on their own terms, Plaintiffs waited at least three months to move to amend. *See supra* Sections I(A)–(B). This constitutes an undue delay. *See PEN Am. Ctr.*, 787 F. Supp. 3d at 1295 (finding an unexplained six-to-eight-week delay was undue and denying leave).

    F.    <u>Amendment Would Materially Prejudice Trajector Medical.</u>

It is axiomatic that "[m]otions for leave to amend can prejudice the nonmoving party, when the request for leave to amend is not made in a timely

manner." *Stuart C. Irby Co. v. W. Sur. Co.*, No. 16-211, 2017 WL 1272210, at *3

(M.D. Fla. Mar. 14, 2017), *report and recommendation adopted sub nom. Stuart C.*

*Irby Co. v. BC Power, Inc.*, No. 16-211, 2017 WL 1165028 (M.D. Fla. Mar. 29,

2017) (citing *Senger Bros. Nursery, Inc. v. E.I. DuPont de Nemours & Co.*, 184

F.R.D. 674, 679 (M.D. Fla. 1999)).  Courts consider "the degree of discovery

completed" and "how the proposed amendments will affect future discovery" to

evaluate prejudice.  *Butler v. Crosby*, No. 4-917, 2006 WL 1071988, at *9 (M.D.

Fla. Feb. 8, 2006).  Where discovery is well underway, and amendment would

force the opposing party to redo substantial work, prejudice is presumed.  *See*

*Stuart C. Irby Co.*, 2017 WL 1272210, at *3.

Here, Plaintiffs' delay threatens to upend the parties' progress.  Trajector

Medical has made seven document productions and is nearing the end of its

production obligations.  (Kagan Decl. ¶ 8.)  During the parties' September 10,

2025 meet and confer, Plaintiffs represented to Trajector Medical that their

document productions may be complete (though Trajector Medical questions that

representation and reserves the right to seek Court intervention given Plaintiffs'

limited productions to date).  (Kagan Decl. ¶ 9, Ex. 5.)  Expert disclosures begin in

January 2026 and class-certification briefing is due in April 2026.  (*See* ECF

No. 121 ¶¶ 1–3.)

Adding seven new defendants, a new plaintiff and class, five claims, and an expanded class period will necessitate additional document searches across multiple entities, re-review of documents and supplemental productions, additional depositions, and substantial schedule disruption. Indeed, Plaintiffs admitted as much in open court when discussing the impact of their then-forthcoming Motion to Amend. (ECF No. 105, at 51:05-62:21 (acknowledging "it would blow things up if that motion is granted.").) Rule 15 does not require Trajector Medical re-do months of discovery because Plaintiffs waited to pursue amendments they could have sought years ago.

This prejudice is compounded by Plaintiffs' proposal to expand the class period by an additional year – from December 4, 2020 to December 4, 2019.[6] To the extent Plaintiffs would seek broader discovery to correspond with that period, it would require Trajector Medical to redo document collection and review and retrieve, restore, and review data from legacy CRM and database systems no longer in active use (which will create an undue burden). (Declaration of Tyler Leonard ¶¶ 4–6.) Trajector Medical's business and technology have evolved over the last several years, and accessing these legacy systems has already been

---

[6]    Plaintiffs' proposed amendment would also effectively expand the class period at *least* several months forward, as it is capped at "the date of any order certifying" the putative class. (FAC ¶ 116.) Plaintiffs' amendment – if allowed – would require a significant expansion of the current schedule.

complex and costly under the current time parameters. *Id.* Extending the class

period by another year would increase that burden, forcing Trajector Medical to

attempt to reopen obsolete systems and reconstruct historical data from outdated

platforms. *Id.* Courts routinely deny late amendments that impose heavy,

avoidable discovery burdens and derail established schedules. *See Senger Bros.,*

184 F.R.D. at 679–80 (denying amendment where reopening discovery would

prejudice defendants).

        G.      <u>Dismissal of Plaintiffs WFAC and Price Should Be Conditioned to Avoid Prejudice.</u>

For two years, WFAC and Price have been named Plaintiffs and served as

representatives for a putative class of accredited agents. Each is integral to class

adequacy and discovery. Yet no deposition dates have been provided despite

repeated requests; their interrogatory responses remain unverified; and no custodial

emails have been produced. (Kagan Decl. ¶¶ 7, 10, Ex. 6, 11.) Allowing

withdrawal now would prejudice Trajector Medical's ability to test class adequacy

and merits assertions. For example, without discovery from WFAC and Price,

Trajector Medical has no party from whom to gather evidence regarding amounts

accredited agents charge veterans for their services, how accredited agents

advertise their services, the types of conversations accredited agents have with

veterans while providing services, or what veterans have told accredited agents

regarding their decisions not to engage the agent for services. Each of these issues

is key to Trajector Medical's ability to defeat a motion for class certification and the ultimate merits of Plaintiffs' claims.

Any dismissal should be conditioned on production of custodial documents and completion of their depositions before dismissal is effective. *See Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co.*, No. 9-02757, 2011 WL 5865059, at *2 (D. Colo. Nov. 22, 2011) (named plaintiff's decision to withdraw from litigation does not "affect Defendants' entitlement to take his deposition"); *see also Plavin v. Group Health Incorporated*, No. 17-01462, ECF No. 114 (M.D. Pa. June 27, 2022) (conditionally granting named plaintiff's motion to withdraw subject to deposition being taken).

## III.    Plaintiffs' Violation of the Local Rules Is an Independent Ground to Deny Their Motion.

"The Court may deny a motion for failure to comply with the local rules, including failure to make good faith efforts to confer." *HVLPO2, LLC v. Oxygen Frog, LLC*, No. 16-336, 2018 WL 2041370, at *1 n.1 (N.D. Fla. Jan. 16, 2018) (citing *Gonzalez v. Batmasian*, No. 16-81696, 2017 WL 698604, at *1 (S.D. Fla. Feb. 17, 2017)); *see also Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 663 F. Supp. 3d 1294, 1313 (M.D. Fla. 2023) ("failure to comply with [meet and confer requirement] is a basis to deny the motion").

Plaintiffs violated the Local Rules by providing Trajector Medical less than 24 hours to review their proposed amendment and provide its position before filing

the Motion to Amend.  (*See* Ex. 2.)  Local Rule 7.1(B) provides that if "a

conference is conducted in writing or electronically, an attorney ordinarily should

be afforded at least 24 hours – as calculated under Federal Rule of Civil Procedure

6 – to respond to a communication."  (N.D. Fla. L. R. 7.1(B).)

     Plaintiffs' rushed timeline is particularly unreasonable given the complaint's

wholesale rewrite. (*See* Ex. 3 (redline comparing pleadings).)  Plaintiffs' "minimal

efforts at resolution fall far short of what the rules contemplate, that is, that counsel

confer with counsel for the opposing party in a <u>good faith effort</u> to resolve by

agreement the issues raised in the motion."  *Planet Bingo, LLC v. Kerr*, No. 10-

315, 2011 WL 13238348, at *2 (N.D. Fla. Oct. 27, 2011) (emphasis in original)

(citing N.D. Fla. L. R. 7.1(B)).  Plaintiffs' failure to meaningfully confer further

underscores their broader lack of diligence under Rule 16.

## IV.    The Court Should Seal Appendix A to Plaintiffs' Motion.

     When evaluating a sealing request, courts "should balance the right of access

against the party's interest in keeping the information confidential."  *Wiggins v.*

*Medtronic MiniMed Inc.*, No. 22-2781, 2023 WL 9785045, at *1 (N.D. Fla.

Nov. 21, 2023).  Courts consider whether disclosure would impair court functions

or harm legitimate privacy interests.  *Ready2Go Aviation LLC v. Galistair Trading*

*Ltd.*, No. 23-23318, 2023 WL 7545327, at *1 (S.D. Fla. Nov. 14, 2023) (citing

*Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007)).

"Documents containing trade secrets, other information that would place a party or individual at a competitive disadvantage . . . are generally strong candidates for sealing." *Equal Emp. Opportunity Comm'n v. Total Sys Servs.*, LLC, No. 23-1311, 2024 WL 4471320, at *20 (N.D. Ga. July 1, 2024), *report and recommendation adopted*, 2024 WL 4471319 (N.D. Ga. Sept. 24, 2024).

Trajector Holdings, Trajector Medical's parent company, is not a party. Its consolidated financial statements contain competitively sensitive and confidential financial information about itself, Trajector Medical, and multiple other nonparty subsidiaries. (Frain Decl. ¶¶ 5–8.)

Sealing is appropriate because the Court need not review these documents to decide this motion because Plaintiffs cannot satisfy Rule 16 or 15. Trajector Medical's and Trajector Holdings' "legitimate interest in maintaining privacy around commercial information including pricing and finances outweighs the public interest in accessing the [documents] here, especially because the information does not appear to be central to the Plaintiff's claims." *Ready2Go Aviation*, 2023 WL 7545327, at *1. Sealing is particularly appropriate given that Appendix A contains "highly sensitive financial information of [a] third party." *Fed. Deposit Ins. Corp. v. Brudnicki*, No. 12-00398, 2014 WL 12480483, at *4 (N.D. Fla. Jan. 30, 2014).

Public filing would give competitors an "unfair advantage" and compromise Trajector Medical's privacy interests. *Ready2Go Aviation*, 2023 WL 7545327, at *1; *see also* Frain Decl. ¶¶ 5–8. No less onerous alternative exists because public filing would compromise Trajector Medical's and Trajector Holdings' privacy interests.

## **CONCLUSION**

After two years and four iterations of the complaint, Plaintiffs continue to replead the same general theories and defects this Court has already rejected. Although two narrow claims remain, Plaintiffs' latest proposed amendments would abandon that focused posture and restart the pleading cycle. Rules 15 and 16 are not invitations to perpetual repleading – they are safeguards against it.

The Court should deny Plaintiffs' Motion for Leave to Amend under Rule 16 for lack of diligence. If the Court analyzes Rule 15, it should find it appropriate to deny leave under Rule 15, as well, because the proposed amendments are futile, unduly delayed, and prejudicial, and because the Fourth Amended Complaint again constitutes a shotgun pleading. If any amendment is permitted, the Court should: (*i*) condition dismissal of WFAC and Price on completion of their document productions and depositions; (*ii*) strike the proposed expansion of the class period; and (*iii*) stay discovery on any new parties or claims until the pleadings are settled.

35

Finally, the Court should grant Plaintiffs' Motion to Seal Appendix A.


Respectfully submitted,

Dated:  October 24, 2025          DEBEVOISE & PLIMPTON LLP
        New York, NY

                                  By: */s/ Megan K. Bannigan*


KING, BLACKWELL, ZEHNDER          Megan K. Bannigan (*pro hac vice*)
& WERMUTH, P.A.                    Jared I. Kagan (*pro hac vice*)
                                  Timothy Cuffman (*pro hac vice*)
Frederick S. Wermuth              Alessandra G. Masciandaro (*pro hac vice*)
(Fla. Bar No. 0184111)            Jennifer M. Romero (*pro hac vice*)
25 E. Pine St.
P.O. Box 1631                     66 Hudson Boulevard
Orlando, FL 32802-1631            New York, New York 10001
Telephone: (407) 422-2472         Telephone: 212.909.6000
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com              mkbannigan@debevoise.com
                                  jikagan@debevoise.com
                                  tcuffman@debevoise.com
                                  amasciandaro@debevoise.com
                                  jmromero@debevoise.com

        *Counsel for Defendant Trajector Medical, LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I, Megan Bannigan, HEREBY CERTIFY pursuant to Local Rule 7.1(F) that the foregoing Opposition to Plaintiffs' Motion for Leave to Amend complies with the word limits set forth in Local Rule 7.1(F) of the Local Rules of the Northern District of Florida. According to the word-processing program used to prepare the foregoing memorandum, and exclusive of the portions of it that are excluded by Local Rule 7.1(F), this memorandum contains a total of 7,885 words.

By: */s/ Megan K. Bannigan*
Megan K. Bannigan

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 24, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: */s/ Megan K. Bannigan*
Megan K. Bannigan